# SCHUMACHER v STATE OF FLORIDA

## Case No. 89-40A (County Court Case No. 87-9596MM10)

Seventeenth Judicial Circuit, Broward County

September 17, 1990

### APPEARANCES OF COUNSEL

**Hilliard Moldoff, Esquire,** for appellant.

**Lewis Michael, Esquire,** Assistant State Attorney, for appellee.

### OPINION OF THE COURT

ARTHUR J. FRANZA, Circuit Judge.

THIS CAUSE having come before the Court on Appellant's appeal from a judgment entered in the County Court, and the Court having reviewed both Appellant's Brief and Appellee's Brief hereby finds the following conclusions of fact and law:

### *STATEMENTS OF FACTS*

The defendant/appellant agreed to a trial by judge where the judge acts as both trier of fact and law. The issue on appeal is whether the trial court erred by convicting the appellant of child abuse by permitting abuse to the child by the one other than the appellant. The appellant was charged with violating *F.S. 827.04(2),* which states that:

. . . anyone who knowingly or by culpable negligence inflicts or permits the infliction of physical or mental injury to the child shall be guilty of a misdemeanor of the first degree . . .

Appellant did not administer the actual beating, this was done by the mother's boyfriend, John Andrus. The child, who was constantly in trouble with the law, was picked up from the police station by his mother and her boyfriend. Both were very angry with him. The appellant was riding in the car with the above persons. After dropping the child, boyfriend and appellant home, the mother went to pick up her other children. At this point, Andrus tied the child to a chair and began to straddle him with a board, while appellant watched. At one point the chair fell over and appellant straightened the chair, with the child still tied to it. (R. 46). Appellant stated when he picked up the chair he told Andrus to leave the child alone, and the beating ceased. The child said it continued. (R. 74). At no time did the appellant try and stop the beating, and it is clear from the record that the mother did not expressly request appellant assume temporary responsibility for the child in her absence. (R. 34, 108).

The trial court convicted the appellant pursuant to the above statute for permitting the mother's boyfriend to abuse the child in his presence. The court found that the appellant had assumed responsibility for the temporary care of the child. The question before the trial court concerned the type of duty imposed by the law on individuals, such as appellant, with regard to the protection of abused children.

## STATEMENT OF LAW

The appellant's argument is the trial court erred in holding him responsible for child abuse, as all he did was observe. Ordinarily, an omission is a failure to act only where there is a legal duty to act. American jurisprudence recognizes four situations where an omission to act constitutes criminal liability.[1]

While appellant's position is that neither situation would apply to him, the argument could be made that the statute imposed a mandatory duty on appellant to act. However, the absence of specific case law to aid this Court in interpreting the plain meaning of the statute, presents a problem. To determine the meaning of the statute, reference

---

[1] The four situations are: 1) where a statute imposes a duty to care, 2) where one stands in certain status relationship to another, 3) where there is a contractual duty to care, 4) where one voluntarily assumes care of another secluding the helpless person so preventing others from rendering aid.
*Whartons Criminal Law, 14th Ed.* sect. 25 *"The act"*, at 116

is made to the relevant words of the statute. The pertinent words of the statute in question relating to appellant are; *"willfully"*, *"culpable negligence"*, *"knowingly"* and *"permits"*. Hon. Judge Pratt, was not presented with any precedent to help her resolve the issue of duty and/ or responsibility with regard to the defendant. Thus, the Judge relied on the word *"permit"* to reach the conclusion that defendant should have intervened to prevent the child from being abused.

The Supreme Court held in *State of Florida v Joyce,* 361 So.2d 406 (Fla. 1978), that *F.S. 827.04(2)* was not unconstitutional, vague, indefinite or overbroad. The language was sufficient to inform men of *common understanding* as to the acts which the statute sought to prosecute. Another case, *State of Florida v Riker,* 376 So.2d 862 (Fla. 1979), reaffirmed the *Joyce* decision and held the language of the subsection, as it read, was simple, straightforward and capable of being understood by persons of common intelligence. The appellant argues that the trial courts' ruling in the present case opposes the Supreme Court decision in *Joyce.* Appellant states the legislature could not have intended individuals, such as the defendant, to be held accountable pursuant to the state. The appellant has misinterpreted the Court's ruling in *Joyce,* as the punishment administered in the present case, was an act the statute would endeavor to prosecute.

The statute does not place an undue burden on appellant, he is required by law to not permit such unlawful activity in his presence. The fact that appellant was in the same room, watched and laughed during the entire episode, adds to the gravity of the situation. This law was enacted primarily for the protection of children. The legislature must have intended persons, like appellant, be held responsible for failing to take some affirmative action to aid a child from being abused. This especially applies to a child who is abused in the presence of another adult.

The Third District Court in *Fischer v Metcalf,* 543 So.2d 785, 790 (Fla. 3d DCA 1989), scrutinized the legislative history behind Chapter 827, to determine the true "legislative intent" of the statute. The thrust of this legislation is to help those who are, by their disability, *substantially unable* to protect themselves from the abusive conduct of others. Failure to report known abuse constitutes a second degree misdemeanor. The Court went on to state:

. . . the trust of the legislation is to help those who are abused, neglected or exploited; to preserve family life, where possible; to deal with the impact of such abuse on siblings, family structure, and the

120

citizens of Florida; and to intervene, treat, and rehabilitate to forestall further harm. It is

clearly intended that the mandatory reporting of such cases will cause the protective services of the state to be brought to bear in an

effort to prevent further abuse, and exploitation . . . (at p. 790).[2]

In *Jakubczak v State*, 425 So.2d 187, (Fla. 3d DCA 1983), the Court held a plain reading of *F.S. 827.04*, as well as the history of the statute, lead the Court to conclude that the legislature expressly intended;

. . . convictions for a failure to do something

which is required to be done . . . (at p. 189).

The statute requires whoever knowingly or willfully or by culpable negligence inflicts or permits the infliction of injury to a child shall be guilty of a misdemeanor of the first degree. An argument can be made that appellant was negligent in that the statute imposed a duty to act, which duty appellant breached.

Negligence is the failure to use reasonable care, and reasonable care is that degree of care which a reasonably careful person would use under like circumstances. Negligence may consist either in doing something that a reasonably careful person would not do under like circumstances, or in failing to do something that a reasonably careful person would do under like circumstances. *State v Winters*, 346 So.2d 991 (Fla. 1977). A definition of "culpable", is blameworthy behavior, thus culpable negligence renders a person responsible for some wrong or error in the breach of a duty.

The trial court opined that as appellant often came to the child's home, and was familiar with both the child and the family, he could not be compared to a complete stranger. A complete stranger may not have a duty to interfere in a similar situation, although a plain reading of the statute might indicate he would. This particular statute is dealing with abused children, and the legislature specifically intended to hold a wider segment of the population responsible for abused

---

[2] Furthermore, in 1983 the legislature created out of section 827, the Child Abuse section, omnibus chapter 415, expensively titled "Protection from Abuse, Neglect, and Exploitation." The chapter reflects a further enlargement of the number of classes receiving protection, to include not only neglected or abused children, the elderly population, and persons suffering from myriad disabilities, but also spouses caught up in domestic violence. The subsequent history of chapter 827 evidences a legislative intent to increase the number of classes protected by the legislation. The young, the aged, and the infirm all find shelter under the statutory provisions.

children. If a child is abused in the presence of an adult, the law imposes a duty on the adult to try and prevent the abuse.[3]

This case concerns a special class of persons, a minor, who was abused in the presence of an adult. The appellant who knew the child quite well, having come to the house frequently, did nothing to try and prevent the abuse. In the same case the child could have been severely beaten and close to death, is one saying the appellant has no duty or responsibility to prevent this? In the presence case, the child was strapped to a chair and beaten with a board. The child's injuries may not appear to be severe, but the fact remains that he was abused. The appellant had a legal, and not just a moral duty, to render assistance in this matter.

The trial court properly applied the law to the facts of this case. Considering the class of persons involved in this case, "children", the trial court did not err in finding appellant guilty. The implication of a "wider" duty is not without legal justification, when one recalls the statute concerns children.

Based on the foregoing, it is

ORDERED AND ADJUDGED that judgment in the trial court is affirmed.

DONE AND ORDERED in chambers at Fort Lauderdale, Florida, on this 17th day of September, 1990.

---

[3] Anyone having knowledge or a reasonable suspicion that a child is abused or neglected in Florida must report such knowledge or suspicion to the Florida Department of Health and Rehabilitative Services. *F.S. 415.504* The report is made to the statewide Child Abuse Registry on a toll free telephone or to the local office of HRS. Immunity from liability is provided for anyone making a report in good faith, and the reporter's confidentiality is respected. *F.S. 415.511.*

Florida has taken significant steps to develop an effective reporting mechanism. Florida's child abuse reporting mechanism is spelled out in its statutes. An effective detection and reporting system must be developed in order to adequately address the problem of child abuse. The young child who is beaten cannot report it or dispute the adult's claim it was an accident. See *8 Nova L.J.* 274, 275, *Child Abuse and Neglect,* (1984).